United States Bankruptcy Court
For The Northern District New York

Jennifer Ann Orlowski,
       Debtor,

v.

Sallie Mae Incorporated,
       Creditor.

Chapter 7
Adversary Proceeding No.:

## Complaint to Determine the Dischargeability of Debt

The Debtor, by and through her attorney, Dirk J. Oudemool, Esq., complains against the Creditor and alleges:

### Nature of the Action

1. This is an adversary proceeding by the Debtor against the Creditor, Sallie Mae Incorporated, to discharge $206,092.72 in student loan debt because the debt constitutes an undue hardship to the Debtor pursuant to 11 U.S.C. §523(a)(8).

### Jurisdiction and Venue

2. This court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) because this adversary proceeding has been commenced in connection with *In Re Jennifer Ann Orlowski*, Case Number 13-61518, which is pending in the Northern District of New York's Bankruptcy Court, Division 5, in front of the Honorable Judge Margaret Cangilos-Ruiz.

3. This action is an adversary proceeding pursuant to Fed. R. Bankr. Proc. 7001(6) and is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) because it seeks a "determination[] as to the dischargeability of [a] particular debt[.]"

4. The venue is proper pursuant to Fed. R. Bankr. Proc. 5005 and Fed. R. Bankr. Proc. 4007.

5. This court will be able to obtain personal jurisdiction over the Defendant pursuant to Fed. R. Bankr. Proc. 7004 (b).

## Parties

6. Jennifer Ann Orlowski resides at 8859 State Route 80, New Woodstock New York, 13122. She commenced a Chapter 7 bankruptcy proceeding before this court on September 16, 2013. The debtor was thirty-eight years old when her petition was filed.

7. Sallie Mae, Incorporated is the debtor's creditor with regard to multiple educational loans that have been consolidated. When the Chapter 7 proceeding was commenced, $206,092.72 was due on those loans. *See* Exhibit A. Sallie Mae has been using BAE Systems as a Bankruptcy Noticing Center, located at 2525 Network Place, Third Floor, Herndon, Viriginia 20171.

## Background

8. The Debtor is currently a self-employed naturopathic doctor in Liverpool, New York. She is the mother of an eight-year-old boy, Casey, who is homeschooled due to his needs. Homeschooling will continue throughout his primary education.

9. The Debtor has a Bachelor's Degree in Zoology from Oswego State University. In the course of an advanced university zookeeping program, she moved to Florida for professional training after three years of academic work.

10. During that time, the Debtor had a major spinal surgery known as a double level fusion on her L3 to L5 vertebrae due to chronic back problems. The surgery was a failure and instead of making her back better, it made her back worse. This surgical failure forced her to quit her zookeeping program and graduate with a bachelor's degree instead of a degree from the program. Due to her condition, she has had to make lifestyle changes ranging from exercise and diet to giving up a job with the United States Geological Service and the graduate marine biology degree that they were sponsoring her for.

11. Despite her condition, the Debtor obtained a doctorate in naturopathy in 2005, after a four-year degree program at the Southwest College of Naturopathic Medicine and Health Sciences.

12. The Debtor is still afflicted with her back condition, which has only been exacerbated by the surgical failure. Even though she has adapted to the best of her ability, the Debtor continues to make lifestyle changes and she still cannot engage in many physically oriented activities. There is no cure for her condition.

13. The Debtor's current monthly income is approximately $2,300. *See* Exhibit A, Schedule I. From 2010 to 2012, her yearly income has fluctuated between $24,287 to $28,248. *See* Exhibit B. This is less than half of the applicable median family income, which was $59,308 when she filed for bankruptcy.

14. The Debtor's monthly expenses are, on average, $2,457. *See* Exhibit A, Schedule J. The Debtor has been making an effort to live quite frugally. Her expenses are approximately $1,000 below the deductions allowed under IRS standards. *See* Exhibit A.

15. Casey's father, Chad Goetz, has provided voluntary child support since Casey's birth; no child support order has been entered with regard to Casey. Mr. Goetz is employed as a

nurse's aid and makes approximately $20,000 per year. Under New York's Child Support Standards Act, if an order were entered then he would have to contribute $281 per month in support. Mr. Goetz does not provide a monthly check to the Debtor but does cooperate with the Debtor to pay one-half of Casey's expenses on an as needed basis. Mr. Goetz contributes to Casey's extracurricular activities, including karate and horseback riding, as well as Casey's additional expenses as a result of homeschooling and toys, clothes, and other miscellaneous expenses. All in all, this amounts to approximately $250 monthly.

16. Despite her best efforts, and in large part due to her student loan debt, her frugality has yet to make her financially solvent and will continue to be an inadequate solution. Prior to filing, she had been relying on funding from her parents in order to fend off total defaults.

17. In addition to the educational loans that Sallie Mae holds, the Debtor also has an educational loan that is held by American Education Services with an outstanding balance of $11,000. The Debtor is not moving for discharge on the AES loan because it does not pose an undue hardship to her. As discussed below, however, the $206,092 Sallie Mae loan does present an undue hardship for the debtor.

**Count One:**
**The Loan Constitutes an Undue Hardship under 11 U.S.C. §523 (a)(8)**

18. Out of $299,995.16 in unsecured debt, Sallie Mae holds $206,092.72 as a consolidated educational debt. Sallie Mae constitutes over two thirds of the Debtor's obligations, which are educational loans under 11 U.S.C. §523(a)(8).

19. The Debtor has worked diligently to start and grow her naturopathic practice, which is her education's sole use. There are no other local naturopathic practices that she can join

and be more profitable in. The Debtor's qualification as a naturopathic doctor is highly specialized and does not translate well into other job markets. The skills are similarly highly specialized and do not readily afford her the ability to change vocations or find employment that is more lucrative.

20. Her obligation to raise her son also will affect her ability to repay the debt in the long term, as she will have to support him both economically and academically for the next eleven years until he is eighteen years old or completes his high school education. As a result, she will have educational and maternal obligations to support her child until she is approximately forty-nine years old. She will also continue to bear economic responsibility for her son until college.

21. The Debtor could not move away from the area because it would not be in her son's best interest. It took the Debtor and her son's father four years to create an environment for Casey where they could both provide him parental support and guidance in one area. Prior to that, Casey's father lived in Arizona. If an opening arose in another area, it is unclear whether or not Casey's father could be able to move along with the Debtor, causing the house to potentially fracture. Similarly, her son's relationship with his grandparents is very close and even if a job opened up in another area, it would be detrimental to her young son to drastically change that relationship.

22. The Debtor has done her best to repay the loans, despite her dire financial situation. She has made payments regularly after the grace period. Despite her ongoing insolvency leading up to her filing, she had been making $355 monthly payments. Even the $355, which was the best the Debtor could do, was far below the $1,069.17 monthly payment. *See* Exhibit C. Even so, her outstanding debt is $206,092.72.

23. Without discharging the $206,092.72 outstanding in educational debt, it is hard to envision any meaningful relief for the debtor in bankruptcy or any rehabilitation for her financial condition. Even assuming that the Debtor could begin making the full monthly payment on the loans, $1,069, it would take her seventeen years to repay the debt, making her 55 years old. Even after the normally dischargeable debts are discharged in bankruptcy, it is improbable that she will be able to make the full payment given her other obligations and prior earnings. In other words, she would remain insolvent. Even if she moved below a minimal standard of living, she would still be unable to make those payments.

24. If she kept paying her pre-bankruptcy payment, $355, even before extra interest and late fees, she would be eighty-five years old when her loans were repaid. The Social Security Administration's life expectancy for the Debtor's age is eighty-five years old, so she would be paying for the rest of her life, and probably would not be able to pay her loan off in her lifetime. Even with a $500 monthly payment, before extra interest and late fees, she would be seventy-one years old when the debt was repaid. Given her severe back condition, it is unlikely that she would be able to work that long at full capacity.

25. For the foregoing reasons, these loans constitute an undue hardship for this debtor and will continue to do so throughout her lifetime, despite her previous good faith efforts to pay the loans off. The Debtor could pay a portion of the total loan's outstanding balance, but $206,092 is an insurmountable amount for her.

**Wherefore** the Debtor respectfully requests, pursuant to 11 U.S.C. §523 (a) (8), that this Court:

1. Discharge the Sallie Mae consolidated educational loan insofar as it constitutes an undue hardship on the Debtor; and

2. Grant any further relief that this court finds equitable and just.

Dated: January 13, 2014

Respectfully Submitted,

Dirk J. Oudemool
Bar Roll No. 103560
*Attorney for the Debtor*
Office and Post Office Address
333 East Onondaga St.
Syracuse, New York 13202
Phone: (315) 474 – 7447